UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JONATHAN HARTGER,

      Plaintiff,

v.

KENT COUNTY and BRANDON MARZ,
in his individual and official capacity,

      Defendants.

CASE NO.  1:18-cv-01221

HON. ROBERT J. JONKER
MAGISTRATE: HON. RAY KENT

William F. Piper (P38636)
William F. Piper, PLC.
**Attorney for Plaintiff**
1611 W. Centre Avenue, Suite 209
Portage, MI 49024
(269) 321-5008
wpiper@wpiperlaw.com

Timothy E. Eagle (P38183)
Randall J. Groendyk (P37196)
Peter A Smit (P 27886)
VARNUM LLP
**Attorneys for Defendants Kent County & Marz**
Bridgewater Place
P.O. Box 352
Grand Rapids, MI 49501-0352
(616) 336-6000
teeagle@varnumlaw.com
rjgroendyk@varnumlaw.com
pasmit@varnumlaw.com

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

## ORAL ARGUMENT REQUESTED

**<u>TABLE OF CONTENTS</u>**

Page(s)

I.  INTRODUCTION AND COUNTER STATEMENT OF FACTS ......................................1

II.  STANDARDS APPLICABLE TO MOTIONS FOR SUMMARY JUDGMENT ...................... 4

III.  LAW AND ARGUMENT

    A.  GENERAL STANDARDS REGARDING QUALIFIED IMMUNITY.......................... 4

    B.  QUESTIONS OF FACT PRECLUDE SUMMARY JUDGMENT…………... 9

    C.  MR. HARTGER WILL NOT PURSUE HIS CLAIMS AGAINST
       THE COUNTY OF KENT ............................................................................ 17

IV.  RELIEF REQUESTED .................................................................................... 17

i

# TABLE OF AUTHORITIES

**Case Citations:**

*Anderson v. Creighton,*
483 U.S. 635, 641; 107 S. Ct. 3034; 97 L.Ed.2d 523 (1987) ........................................................ 4,5

*Beaven v. U.S. Dept. of Justice*, 622 F.3d 540 (6th Cir. 2010) ........................................................ 13

*Birch v. Cuyahoga County Probate Court,*
392 F. 3d 151, 157 (6th Cir. 2004) ........................................................ 4

*Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 102 Fed. 2d 215 (1963) .............................. 12

*Brinegar v. U.S.,*
338 U.S. 160, 175-76, 69 S.Ct. 1302, 93 L.Ed.2d 1879 (1949). ........................................................ 7

*Brown v. Texas,*
443 U.S. 47, 89 S.Ct. 2637, 61 L.Ed.2d 357 (1979) ........................................................ 7

*Danese v.Asman,*
875 F.2d 1239, 1242 (6th Cir. 1988), citing *Anderson
v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) ............................................ 6

*Darnell v. Caver*, 1998 W.L. 416000 *3 (6th Cir. July 7, 1998) ............................................ 15

*District of Columbia v Wesby*, 583 U.S. ___, 138 S.Ct. 577,
144 L.Ed 2d 453 (2018) ........................................................ 14

*Dugan v. Brooks*, 818 F. 2d 513, 516-17 (6th Cir. 1987) ........................................................ 15

*Dunaway v. New York,*
442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979) ........................................................ 7

*Estate of Carter v. City of Detroit,*
80 F.3d 305, 310 (6th Cir. 2005) ........................................................ 6

*Feathers v. Aey,*
319 F.3d 843, 848 (6th Cir. 2003) ........................................................ 5

*Gardenhire v. Schubert,*
205 F.3d 303, 311 (6th Cir. 2000) ........................................................ 6

*Graham v. Conner,*
490 U.S. 386, 104 L. Ed. 2d 443, 109 S. Ct. 1865 (1989) ........................................................ 7,8

*Henry v. Metropolitan Sew. Dist.,*
922 F. 2d 332, 339 (6th Cir. 1990) quoting
*Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727,
2735; 73 L.Ed.2d 396 (1982) ..................................................................... 4

*Holt v. Artis,*
843 F. 2d 242 (6th Cir. 1988) ..................................................................... 8

*Johnson v.* United States, 333 U.S. 10 (1948) ........................................... 16

*Kostrzewa v. City of Troy*, 247 F. 3d 633 (6th Cir. 2001) ...........................16

*Leber v. Smith*,
773 F. 2d 101, 105 (6th Cir. 1985) .............................................................. 8

*Lester v. City of Chicago*, 830 F. 2d 706, 714 (7th Cir. 1987) ...................15

*Lyons v City of Xenia*, 417 F.3d 565 (6th Cir. 2005)...................................16

*Malley v. Briggs,*
475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)................................5,7

*Matsushita Electric Industry Co. v. Zenith Radio Corp.,*
475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986)......................... 4

*Mullenix v. Luna,*
577 U.S. ___, 136 S.Ct. 305, 307, 308, 193 L.Ed.2d 255 (2015)..................12

*Myers v. Potter,*
422 F.3d 347 *(*6th Cir. 2005) .................................................................... 6

*Phelps v. Coy*, 286 F. 3d 295, 302 (6th Cir. 2002) .............................14, 15

*Poe v. Haydon*,
853 F.2d 418, 425-26 (6th Cir. 1988) .......................................................... 9

*Romo v. Largen*,
723 F.3d 670 (2013)..................................................................................... 9

*Saucier v. Katz*,
533 U.S. 194, 121 S. Ct. 2151, 150 L.Ed.2d 272 (2001) ............................. 5

*Shillingford v. Holmes*, 634 F. 2d 263, 266 (5th Cir. 1981) .....................15

*Stocker v United States*, 705 F.3d 225 (6th Cir 2013) ................................................................. 13

*Smith v Stoneburner, 716 F.3[rd] 926, 934 (2013)* ................................................................. *13*

*Thacker v City of Columbus*, 328 F.3d 244, 255 (6th Cir 2015) ................................................. 7

*Vance v. Wade*, 546 F. 3d 774 (6th Cir. 2008) ................................................................. 16

*Walton v. City of Southfield*,
995 F. 2d 1331, 1342 (6th Cir. 1993) ................................................................. 8

*West v. Tyson Foods, Inc*., 374 Fed App'x 624, 635 (6th Cir 2010) ................................................. 13

## **Court Rules and Statutes**:

42 U.S.C. §1983 ................................................................. 1,7

Fed. R. Civ. P. 56(c) ................................................................. 4
Fed. R. Civ. P. 56 (f)(1) ................................................................. 26

Fourth Amendment of the
Constitution of the United States ................................................................. 1,5,7,8,14,15

# I. INTRODUCTION AND COUNTER STATEMENT OF FACTS.

The plaintiff Jonathan Hartger has sued the defendants Kent County Sheriff's Department Deputy Brandon Marz and the County of Kent as a result of an unconstitutional arrest and excessive force used against him during Deputy Marz's arrest of him on December 10, 2017, contrary to the Fourth Amendment to the Constitution of the Unite States. He brings this lawsuit under 42 U.S. §1983.

Mr. Hartger was born in May 1988.  Before December 10, 2017 he had worked as a phone repair technician in Florida.  However, because of Hurricane Irma, he returned to Grand Rapids (**Hartger dep, at pp. 4-9, 22-25, 138**).

Before December 10, 2017 Mr. Hartger had rented on Airbnb home, which was located at 7055 Brooklyn Street in Gaines Township, Kent County, Michigan.  He had been there for a day or two.  That evening he invited some people over to visit.  There were 20-30 people there in the evening hours of December 9 and through the early morning hours of December 10.  The music in the house was not loud, and the people in it weren't loud. (**Hartger dep, at pp. 25-41; White dep, at pp. 17-18, 27; Exhibits 1, 2 and 3 which are the affidavits of Connor McKay, Lauren Christensen, and Aaron Thomas**).

A neighbor called the police, concerned about the number of cars on the street in the residential neighborhood, but not about the noise.  Deputies Brandon Marz, John White and Brett Holmes of the Kent County Sheriff's department responded to the call.  (**Marz dep, at pp. 12-14; White dep, at pp. 5-10, 17-18, 27; Holmes dep, at pp. 7-8**).

When Deputy Marz arrived, Mr. Hartger was outside on the porch, smoking a cigarette.  It was pitch black out, albeit the porch light might have been on.  Mr. Hartger then turned his back to the street and walked to the front door.  People in the house were behind the door and behind the living room window.  (**Hartger dep, at pp. 48-54, 58-61**).

1

As Mr. Hartger reached for the front door he heard the commotion of a person running behind him. An individual whom he had not seen then grabbed him from behind, stating, "Party's over motherfucker." The individual, who was the defendant Brandon Marz, grabbed him several times as Mr. Hartger was telling him to get his hands off of him, in order apparently to grip him better. Deputy Marz then pulled Mr. Hartger off the porch to the right of it as it would appear from the street, lifted him up, and slammed him head first onto the hard snowy ground or pavement, about four feet from the porch (**Hartger dep, at pp. 52-78**).

While Mr. Hartger was on the ground he did not struggle or resist. Deputy Marz continued to assault Mr. Hartger on the ground, including dropping his knee down onto Mr. Hartger's back. Deputy Marz pulled Mr. Hartger's arm up while handcuffing him, hurting his neck and back. This assaultive conduct on the ground lasted for five minutes or so. Deputy Marz and perhaps another deputy also wrenched Mr. Hartger's wrist and twisted his left arm while handcuffing him (**Hartger dep, at pp. 68-94**).

After handcuffing him, the deputies walked Mr. Hartger to Deputy Marz's police cruiser without incident. Deputy Marz did a pat down search of Mr. Hartger, finding no contraband (**Marz dep, at pp. 25-31**). In the police cruiser, Deputy Marz told Mr. Hartger that he shouldn't have hit him. Mr. Hartger denied hitting Deputy Marz. Deputy Marz also told Mr. Hartger that the other deputies would back up whatever he would say (**Hartger dep, at pp. 94-98**).

Only after verifying Mr. Hartger's name while he was in the police cruiser did Deputy Marz discover that Mr. Hartger had two outstanding warrants for failure to appear. Deputy Marz drove Mr. Hartger to the Kent County Corrections Center, where Mr. Hartger remained for two days before bonding out (**Hartger dep, at pp. 97-104; Marz dep, at pp. 31-32, 36-37**).

After preparing his police reports, Deputy Marz requested a charge of resisting and obstructing a police officer against Mr. Hartger. After the charge deputy had reviewed it, Mr.

Hartger was charged with attempted resisting and obstructing a police officer (**Marz dep, at pp. 39-40, 64-66, 70**).

In mid-February 2018, Mr. Hartger filed a citizen's complaint against Deputy Marz. Lieutenant Russell Larson, who was Deputy Marz's commanding officer, was assigned to investigate it. He took oral statements from Mr. Hartger, Deputy Marz and the other responding deputies. Lieutenant Russell Larson could not, in his deposition, recall anything beyond what he had written in his report. He attempted to get the audiotape and videotape of the incident in question, but he discovered that it had been destroyed, because it was after the 60-day period in which the audiotapes and videotapes are actually retained, despite that the county's actual retention policy was that the audiotapes and videotapes should be retained for 90 days. Because Deputy Marz and Mr. Hartger told conflicting stories about what had happened, and because there was no audiotape and videotape to resolve the dispute, Lieutenant Larson determined that Deputy Marz should be exonerated of Mr. Hartger's complaints (**Larson dep, pp. 5-68; Exhibits 4, 5, and 6**).

During the criminal proceedings against him, Mr. Hartger refused to plead to the charge or to any lesser included charges arising out of the December 20, 2017 incident, despite that the prosecutor had practically begged him to do so. The prosecutor eventually dismissed the charges against him arising out of the December 10, 2017 incident. He pleaded to some charges regarding some traffic incidents that were the subjects of the warrants, but those were for different days and incidents from the December 10, 2017 incident. This was not a plea bargain, because the incidents were different (**Harter dep, at pp. 170-185**).

Mr. Hartger had post-concussion symptoms as a result of the December 10, 2017 incident for several days. He had bruises and lacerations on his face, wrists and abdomen. He has had lingering back and neck issues because of the December 10, 2017 incident (**Harter dep, at pp. 114-170).**

## II. STANDARDS APPLICABLE TO MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is appropriate where, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We, "must view all the facts and the inferences drawn therefrom in the light most favorable to the nonmoving party," *Birch v. Cuyahoga County Probate Court*, 392 F. 3d 151, 157 (6th Cir. 2004), but we will uphold a grant of summary judgment "[w]here the record as a whole could not lead a rational trier of fact to find for the non-moving party," *Matsushita Electric Industry Co. v. Zenith Radio Corp*., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986).

## III. LAW AND ARGUMENT

### A. STANDARDS REGARDIG QUAILIFIED IMUNITY

Before delving into the Constitutional violations, the plaintiff needs to address the legal framework for it, including the doctrine of qualified immunity, which the defendants will obviously assert. "The doctrine of qualified community affords protection against individual liability to officials as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Henry v. Metropolitan Sew. Dist.,* 922 F. 2d 332, 339 (6th Cir. 1990) quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2735; 73 L.Ed.2d 396 (1982). The law enforcement officer is entitled to qualified immunity if "a reasonable officer could have believed [his actions] to be lawful, in light of clearly established law and the information the [officer] possessed." *Anderson v. Creighton*, 483 U.S. 635, 641; 107 S. Ct. 3034; 97 L.Ed.2d 523 (1987). However, if an officer subjectively believed that he was acting lawfully, but the facts at his disposal did not warrant such a conclusion, he will

not be protected. The defense does not protect the acts of an incompetent, corrupt or dishonest officer. *Anderson v. Creighton, supra*; *Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

In *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L.Ed.2d 272 (2001), the Supreme Court addressed the qualified immunity inquiry in the context of a Fourth Amendment claim. The court stated that reviewing courts must first address whether, "taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right." *Id.* at 201, 121 S. Ct. at 2156. If the answer to the first inquiry is yes, the next inquiry is whether the right was clearly established, an "inquiry ... [that] must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted ... If the law did not put a reasonable officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Id.,* at 202, 121 S. Ct. at 2156-57.

The Sixth Circuit has synthesized the qualified immunity three part inquiry as follows in *Feathers v. Aey,* 319 F.3d 843, 848 (6th Cir. 2003):

> Qualified immunity involves a three step inquiry. First, we determine whether, based upon the applicable law, the facts reviewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred. Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known. Third, we determine whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively reasonable in light of the "clearly established constitutional rights" *Williams v. Mehra,* 186 F.3d 685, 691 (6th Cir. 1995) (en banc) citing *Dickerson v. McClellan,* 101 F.3d 1151, 1158 (6th Cir. 1996).

Some courts in the Sixth Circuit simplify the qualified immunity inquiry into two steps, viz.: (1) whether, considering the allegations in a light most favorable for the party injured, a constitutional right has been violated; and (2) whether the right has been clearly established. *Estate of Carter v. City of Detroit,* 480 F.3d 305, 310 (6th Cir. 2005). These courts have noted that, "in many factual contexts, the fact that a right is 'clearly established' sufficiently implies that its violation is objectively unreasonable" *Id*., at p. 31, at n.2 See also *Myers v. Potter,* 422 F.*3*d 347 *(*6th Cir. 2005).

To be clearly established it is clear that the officer's conduct does not have to be identical to conduct  previously held unconstitutional in order to overcome qualified immunity.  The requirement does mean*,* though, that "...in light of the preexisting law, the illegality must be apparent." *Danese v.Asman,* 875 F.2d 1239, 1242 (6th Cir. 1988), citing  *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).  With respect to this inquiry, courts in the Sixth Circuit look first to decisions of the Supreme Court, then to decisions of the Sixth Circuit and other courts within the Sixth Circuit, and finally to decisions of other circuits.  *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000).

In *Mullenix v. Luna*, 577 U.S. ____, 136 S.Ct. 305, 307, 308, 193 L.Ed.2d 255 (2015), the court summarized the qualified immunity analysis as follows:

> The doctrine of qualified immunity shields officials from civil liability so long as their conduct "'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. ___, ___ (2012) (slip op., at 5) (internal quotation marks and alteration omitted).  "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).  Put simply, qualified immunity protects "all but the plainly incompetent

or those who knowingly violate the law." *Malley v. Briggs*, 475 U.LS. 335, 341 (1986).

> "We have repeatedly told courts . . . not to define clearly established law at a high level of generality." *Al-Kidd, supra*, at 742. The dispositive question is "whether the violative nature of *particular* conduct is clearly established." *Ibid.* (emphasis added). This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (*per curiam*) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

Regarding the issues in this case, the law is clearly established that probable cause to arrest exists where the facts and circumstances known to the officer, and of which he had reasonable trustworthy information, are sufficient to warrant a prudent person to believe that the suspect has probably committed a crime. *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *Brown v. Texas*, 443 U.S. 47, 89 S.Ct. 2637, 61 L.Ed.2d 357 (1979); *Brinegar v. U.S.,* 338 U.S. 160, 175-76, 69 S.Ct. 1302, 93 L.Ed.2d 1879 (1949). The issue of probable cause in a civil case is a jury question, unless there is only one reasonable determination possible. *Thacker v City of Columbus*, 328 F.3d 244, 255 (6th Cir 2015).

Claims under 42 U.S.C. § 1983 that police used excessive force in violation of the Fourth Amendment to the Constitution of the United States, because the claims necessarily involve seizures, are analyzed under the objective reasonableness standard of the Fourth Amendment. *Graham v. Conner*, 490 U.S. 386, 104 L. Ed. 2d 443, 109 S. Ct. 1865 (1989). More specifically, the Court stated in pertinent part as follows:

> Determining whether the force used to effect a particular seizure is "unreasonable" under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake ..... Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.

109 S. Ct. At 1871-72 (citations omitted).   See also *Walton v. City of Southfield*, 995 F. 2d 1331, 1342 (6th Cir. 1993); *Leber v. Smith*, 773 F. 2d 101, 105 (6th Cir. 1985) ("The issue we must address then, is whether [the police officer's] actions were reasonable under the Fourth Amendment ...[c]onsidering [all] the factual circumstances surrounding the incident in question ....")

There is no precise definition for what is reasonable force.  The court in *Graham* advised that there must be careful attention to the totality of the facts and circumstances of every case, including 1) the severity of the alleged crime at issue, 2) whether the suspect posed an immediate threat to the safety of the officer or officers, and 3) whether he is actively evading arrest or attempting to evade or flee.

Finally, as the *Graham* court explained as follows, the state of mind of the officers at the time of the seizure has no bearing on the reasonableness of their actions at the time of the seizure:

> Whatever the empirical correlations between "malicious and sadistic" behavior and objective unreasonableness may be, the fact remains that the "malicious and sadistic" factors puts in issue the subjective motivations of the individual officers, which our prior cases make clear has no bearing on whether a particular seizure is "unreasonable" under the Fourth Amendment.

109 S. Ct. At 1872.  The *Graham* court further left no doubt that the test for reasonableness is an objective one.  As the court stated in *Graham,* "[A]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force, nor will an officer's good intentions make an objectively unreasonable use of force constitutional."  409 U.S. at 397.

The defendant Marz has claimed qualified immunity for the force that he used.  The first inquiry into qualified immunity is easily disposed of.  The right not to be subject to excessive force is clearly established.  *Leber v. Smith*, 773 F. 2d 101 (6th Cir. 1985); *Holt v. Artis*, 843 F. 2d 242 (6th Cir. 1988).

The defendant Marz, improperly, has addressed the qualified immunity in this case only from his factual perspective. This is improper, becase there are numerous factual disputes in this case regarding what actually happened. It is important to emphasize that the Sixth Circuit has stated as follows regarding cases wherein there are factual disputes regarding what had happened, and how that affects the analysis of qualified immunity:

> Summary judgment would not be appropriate if there is a factual dispute (*i.e.,* a genuine issue of material fact) involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights. Summary judgment also should be denied if the undisputed facts show that the defendant's conduct did indeed violate clearly established rights. In either event, the case will then proceed to trial . . . .

*Poe v. Haydon*, 853 F.2d 418, 425-26 (6th Cir. 1988) (citations omitted); See also particularly *Romo v. Largen*, 723 F.3d 670 (2013), which is a case arising out of this court, and the cases cited therein, including those from the United State Supreme Court. The defendant, tellingly, has not acknowledged this controlling case law, much less addressed the numerous factual disputes in this case about what had actually happened.

### B.  QUESTIONS OF FACT PRECLUDE SUMMARY JUDGMENT

- Mr. Hartger testified at his deposition that he was alone on the porch smoking a cigarette when Deputy Marz had arrived (**Hartger dep, at pp. 50-55**). Deputy Marz, testified, by contrast, that when he had arrived at the residence, parked in the driveway on the right side of it, exited his police cruiser, and approached the porch, there was a large group of people outside. All of them then entered the residence upon seeing him except for Mr. Hartger (**Marz dep, at pp. 14-19**).

- Mr. Hartger testified in his deposition that it had been "pitch black", but the porch light might have been on (**Hartger dep, at pp. 84, 61**). Deputy Marz testified that the porch

light was on (**Marz dep, pp. 28**).  The witnesses in the house testified more consistently with Deputy Marz on this issue (**Exhibits 1, 2 and 3**).

- Mr. Hartger testified that there was no loud music in the house or outside of it at the time in question (**Hartger dep, at pp. 39-41**).  His testimony in this regard was corroborated by the affidavits of Connor McKay, Lauren Christenson, and Aaron Thomas, who were all inside of the house at the time (**Exhibits 3, 4 and 5**) (**See also Larson dep, at pp. 39-42; White dep, at pp. 17-18, 27**).  Deputy Marz testified , however, that he had heard loud music when he approached the house (**Marz dep, at pp. 15-16**).

- Mr. Hartger testified that he hadn't used marijuana, drugs or alcohol on December 10, 2017.  He also testified that after Deputy Marz had placed him in his patrol vehicle, Deputy Marz told him that the other deputies would verify whatever he said (**Hartger dep, at pp. 25-26, 94-97; see also Larson dep, at p. 64**).  Deputy Marz testified that he could smell marijuana on Mr. Hartger when he encountered him on the porch.  He also testified that Mr. Hartger had admitted to him that he had used marijuana that night (**Marz dep, at 23, 37-38**).  Deputy White backed up Deputy Marz about the alleged marijuana smell from Mr. Hartger (**White dep, at p. 14**).

- Mr. Hartger testified that while he was on the porch he had turned his back to the street and was about to re-enter the house, and he hadn't seen Deputy Marz as Deputy Marz had approached him on the porch (**Hartger dep, at pp. 40-54**).  Deputy Marz testified that Mr. Hartger had looked at him as he had approached him before he had turned and had attempted to enter the residence (**Marz dep, at pp. 17-19**).

- Mr. Hartger testified that he had heard the commotion of someone running onto the porch and that the person he later realized was Deputy Marz grabbed him from behind,

stating only, "Party's over motherfucker" (**Hartger dep, pp. 50-57**). Deputy Marz testified that he had walked, not run, up onto the porch and, with his right hand reached out supported by his left hand, had told Mr. Hartger to "stop". He denied telling Mr. Hartger "Party's over motherfucker" (**Marz dep, at pp. 19-25**). Deputy Marz did not wait for other deputies or identify himself as a police officer (**Marz dep, at pp. 24-25, Larson dep, at pp. 29-30, 46).**

- Mr. Hartger testified that after Deputy Marz had grabbed him first from behind, he told Deputy Marz not to touch him (**Hartger dep, pp. 55-58**). Deputy Marz testified that, after he had reached his arm out, Mr. Hartger pushed his arm away, telling him "Don't fucking touch me" (**Marz dep, at pp. 19-23**).

- Mr. Hartger testified that after having grabbed Mr. Hartger several times to get a good grip on him, Deputy Marz pulled him off the porch to the right of it as one could see from looking from the street, lifting him up, and slammed him face first onto the snow covered ground or pavement, about four feet from the porch (**Hartger dep, at pp. 55-71, 76-77, 86-87**). Mr. McKay, Ms. Christenson, and Mr. Thomas verified Mr. Hartger's description of the events (**Exhibits 1,2 and 3**). Deputy Marz testified, by contrast, that after he had told Mr. Hartger to stop, and Mr. Hartger had pushed his hand away, Mr. Hartger jumped off the porch and ran into the side yard to the right. Deputy Marz then tackled Mr. Hartger about fifteen to thirty feet from the porch, with Mr. Hartger falling chest first, according to his testimony and statement to Lieutenant Larson. Deputy Marz landed on Mr. Hartger's legs (**Marz dep, at pp. 19-23; Larson dep, at p. 35**). Deputies White and Holmes testified that Mr. Hartger was even further from the porch – about thirty to fifty feet away from it (**White dep, at pp. 12-14, 27-28, 43-44; Holmes dep, at pp. 13-14, 18**).

11

- Mr. Hartger testified that while he was on the ground he had his hands out and wasn't resisting, but Deputy Marz, continued to strike, assault, and manipulate his body multiple times for five minutes, including dropping his knee hard onto his back (**Hartger dep, at pp. 68-73**).   Deputy Marz testified that he had subdued the mostly compliant Mr. Hartger within about thirty seconds, except that he had to have assistance by one of the other deputies to bring one of Mr. Hartger's arms out from under him in order to handcuff him (**Marz dep, at pp. 23-26**).

- Mr. Hartger testified that Deputy Marz had roughly pulled up his left arm, twisted it painfully, and wrenched his wrist while handcuffing him (**Hartger dep, at pp. 82-83, 92-94**).

Another important issue in this case is that Deputy Marz testified that he assumed that he had activated his body mic as he had approached Mr. Hartger, because it was his practice to do so, although he didn't specifically recall having done so. (**Marz dep, pp. 16-17, 34-35; Larson dep, at pp. 24, 27, 55**).  He also parked his police cruiser to the right of the driveway facing the house. (So there should have been both audio and video of the incident in question.)  But despite that he caused Mr. Hartger to be charged with attempting to resist and obstruct a police officer, and despite that he knew that defense attorneys generally request the videotape and audiotape of an incident in the criminal discovery process, and it was therefore Deputy Marz's duty to request them to use in the criminal prosecution, he didn't request the videotape or audiotape at any time to use in the criminal prosecution of Mr. Hartger (**Marz dep, at pp. 39-44; see also Larson dep, at pp. 42-43**).  The videotape and audiotape were then automatically destroyed after 60 days, even though the county's retention policy was to keep the recordings for 90 days (**Butts dep, at pp. 4-25; Larson dep, at pp. 17, 23-24, 27, 39; Exhibits 4, 5, and 6**).  Beyond being a *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 102 L.Ed. 215 (1963) violation, and grossly unfair to a criminal

defendant, and unethical, this constitutes consciousness of wrongdoing. Deputy Marz clearly didn't request the videotape and audiotape because he knew that it would help Mr. Hartger and not him, and they would not be flattering to him.

There should be an adverse interference instruction in this case against the defendant Marz because of the destruction of the videotape and audiotape. It is outrageous that a criminal prosecution of Mr. Hartger was even allowed to proceed for some time when the evidence had been allowed to have been destroyed. Mr. Hartger refused to plead guilty to anything arising out of the December 10, 2017 incident, and the charges were eventually dismissed (**Hartger dep, at pp. 170-185**). At any rate, the instruction is certainly justified, as Deputy Marz had control over evidence, he had obligation to preserve it at the time it was destroyed, the records were destroyed with a culpable state of mind, and the records were clearly relevant. *Beaven v. U.S. Dept. of Justice*, 622 F.3d 540 (6th Cir. 2010). *Stocker v United States*, 705 F.3d 225 (6th Cir 2013). The jury can even infer adversely against the defendant Marz even in the absence of an adverse inference instruction. *West v. Tyson Foods, Inc*., 374 Fed App'x 624, 635 (6th Cir 2010), Therefore, for the purposes of this summary judgment motion, this court should infer that the audiotape and videotape, had they been produced, would have been adverse to Deputy Marz. It is telling the defendants did not even discuss this issue in their brief, feigning as if it isn't relevant or important, when it is highly relevant and important.

Clearly, because of the numerous factual disputes between Mr. Hartger and Deputy Marz regarding what had happened, because of the other witnesses supporting Mr. Hartger's account, and because of the adverse inference that the court should make against Deputy Marz because of the destruction of the audiotape and videotape, this court should not grant summary judgment to Deputy Marz on Mr. Hartger's unconstitutional arrest and excessive force claims. As stated in

*Smith v Stoneburner*, 716 F.3rd 926, 934 (2013), "dueling" accounts create questions of fact that preclude dismissal on the grounds of qualified immunity. [1]

Under Mr. Hartger's version of events, he was standing on the porch of a house, wherein there was no loud music, doing nothing illegal, when Deputy Marz grabbed him from behind without warning and slammed him face first onto the ground. It takes no great legal analysis to conclude that this constitutes an unconstitutional arrest that no reasonable officer could have believed was constitutional, as Mr. Hartger had not been committing any crime. There facts are a far cry from the bizarre and suspicious circumstances described in *District of Columbia v Wesby*, 583 U.S. ___, 138 S.Ct. 577, 144 L. Ed 2d 453 (2018) referenced in the defendant's brief.

Even if one improperly concluded that Deputy Marz had probable cause to arrest Mr. Hartger for use of marijuana or resisting arrest and obstructing a police officer, under Mr. Hartger's version of events, supported by other witnesses and the adverse inference, the force he used against Mr. Hartger was excessive. Under the circumstances as described above, law enforcement interests clearly did not justify the Deputy Marz's conduct. It was excessive and gratuitous. See e.g. *Soloman v. Auburn Hills Police Department*, 389 F. 3d 167 (6th Cir. 2004) (force was excessive because suspect was arrested on a minor charge, did not pose a threat to the safety of officers or others, and did not attempt to flee or resist arrest).

There is no shortage of additional precedent indicating that the gratuitous use of violence against an unarmed, unresisting suspect, as in this case, is a Fourth Amendment violation. First of all, when a suspect's hands are otherwise restrained, the cases of *Phelps v. Coy*, 286 F. 3d 295, 302 (6th Cir. 2002) and *McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1988) are sufficient

---

[1] These dueling accounts continued in Lieutenant Larson's internal investigation (**Larson dep, at pp 20-43**).

to provide the rule of decision even though the means of restraint in those cases are different from handcuffs. Second, the *McDowell* case stands, in part, for the proposition that the gratuitous use of force against an unarmed suspect constitutes a violation of the Fourth Amendment. *McDowell,* 863 F. 2d at 1307. *McDowell* cited in favor of this proposition the case of *Dugan v. Brooks*, 818 F. 2d 513, 516-17 (6th Cir. 1987) - a case that involved the gratuitous use of a nightstick to strike from behind an unarmed and restrained suspect. The *Dugan v. Brooks* case found the facts alleged constituted a Fourth Amendment violation. It makes no sense to argue that substituting the hard ground for a nightstick should result in a different rule. *See also Lester v. City of Chicago*, 830 F. 2d 706, 714 (7th Cir. 1987) (holding that jury should consider whether kneeing a non-resistant subject in the back during arrest may constitute a Fourth Amendment violation, which is the case here); *Shillingford v. Holmes*, 634 F. 2d 263, 266 (5th Cir. 1981) ( holding that bludgeoning an unarmed bystander during a disturbance without cause constituted a Fourth Amendment violation). See also *Smith v Stoneburner*, *supra* (Banging a suspect's head against a wall for the theft of a $14.99 phone charger was unreasonable).

Even more significant is the Sixth Circuit's decision in *Darnell v. Caver*, 1998 W.L. 416000 *3 (6th Cir. July 7, 1998), which, though an unpublished opinion, was expressly approved by the Sixth Circuit in its 2002 published decision of *Phelps v. Coy*, 286 F. 3d 295, 302 (6th Cir. 2002). In *Darnell v. Caver* the Sixth Circuit held that Darnell was entitled to a jury trial as to the supporting testimony that the police officer - while Darnell was unarmed, unrestrained, drunken and not completely cooperative - injured him by throwing and/or slamming his head to the asphalt. This case, if anything, makes a stronger showing of a Fourth Amendment violation due to the repeated nature of the excessive force even after the slam down.

In this case the plaintiff doesn't construe the rough handcuffing of Mr. Hartger causing an injury as a separate claim, but, rather, just a part of the excessively rough arrest of Mr. Hartger.

Nonetheless, this rough process of handcuffing of Mr. Hartger, causing neck and shoulder injuries to him requiring medical treatment (**Hartger dep, at pp. 114-132**), constitutes excessive force. *Vance v. Wade*, 546 F. 3d 774 (6th Cir. 2008); *Kostrzewa v. City of Troy*, 247 F. 3d 633 (6th Cir. 2001). *Lyons v City of Xenia*, 417 F.3d 565 (6th Cir. 2005).

Noteworthy also is that in the last 25 years, there have been only about 12 incidents in which any Kent County Sherriff's Department discharged his gun at a suspect. There are usually 180 road patrol deputies at any one time. Deputy Marz, who was hired only in early 2015, was the deputy involved in two of the shootings. On one of them he had shot a suspect who had allegedly pulled a gun at two other deputies, but the two other deputies didn't shoot (**Larson dep, at pp. 1-17, 56-58; Marz dep, at 5-14, 47-62**). This supports the view that this young Afghanistan/Iraq war veteran is an over aggressive officer and was in this case. If he doesn't stop his overly aggressive conduct, some additional poor souls could end up badly injured or dead.

The defendant Marz, at pages 26-28 of his brief, appears to attempt to justify his arrest of Mr. Hartger based on his discovery, after his arrest of Mr. Hartger, and after he had placed him in his police cruiser, of some outstanding bench warrants for Mr. Hartger for failure to appear. He even stated, "…the outstanding bench warrants on December 10, 2017, are fatal to Plaintiff's false arrest/imprisonment claim". Defendants' brief, at p. 28, page ID #300. This argument is groundless. Probable cause to arrest must exist before the arrest is made. Evidence obtained after the arrest cannot apply retroactively to justify the arrest. *Johnson v. United States*, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948).

The defendant Marz, overall, asks this court to ignore factual disputes between Mr. Hartger and Deputy Marz, to assume that Deputy Marz had asked Mr. Hartger to "stop," to assume that he had ignored this alleged instruction, to assume that he had jerked away from Deputy Marz, to assume that he had pushed his hand away, to assume that he had sworn at Deputy Marz, and to

assume that he had run away. He asks this court to interpret the evidence in the favor of the non-moving party. He also implicitly asks the court to ignore the evidence of the witnesses inside of the home and ignore the destruction of the audiotape and videotape. He also attached an irrelevant opinion of an alleged expert, operating inappropriately as a human lie detector, who assumed that everything Deputy Marz testified about was true. This court should not adopt this faulty legal analysis and improper factfinding.

## C. **MR. HARTGER WILL NOT PURSUE HIS CLAIMS AGAINST THE COUNTY OF KENT**

Counsel for plaintiff inherited this case from a different law firm. He would not have filed claims against the County of Kent. He will not pursue such claims here.

## III. **RELIEF REQUESTED**

For all of the above reasons, this Court should deny the defendant Marz's Motion for Summary Judgment.

Dated: February 28, 2020

William F. Piper, PLC.
Attorney for Plaintiff


By: /s/ William F. Piper
William F. Piper (P38636)


## CERTIFICATE OF COMPLIANCE

Pursuant to W.D. Mich. LCivR 7.3(b), I, William F. Piper, certify that the foregoing brief was drafted using Microsoft Word for Office 365 word processing software, and it comprised of 5,718 words, exclusive of the case caption, cover sheets, table of contents, table of authorities, signature block, attachments, exhibits, affidavits and other addenda.

Dated: February 28, 2020          By:     /s/ William F. Piper
William F. Piper (P38636)