UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

JONATHAN HARTGER,

Plaintiff,

v.

KENT COUNTY and BRANDON MARZ,
in his individual and official capacity,

Defendants.

CASE NO.  1:18-cv-01221

HON. ROBERT J. JONKER
MAGISTRATE: HON. RAY KENT

William F. Piper (P38636)
WILLIAM F. PIPER PLC
1611 W. Centre Ave., Ste. 209
Portage, MI  49024-5393
(269) 321-5008
wpiper@wpiperlaw.com

Timothy E. Eagle (P38183)
Randall J. Groendyk (P37196)
Peter A Smit (P 27886)
Herman D. Hofman (P81297)
VARNUM LLP
Attorneys for Defendants Kent County and
    Brandon Marz
P.O. Box 352
Grand Rapids, MI 49501-0352
(616) 336-6000
teeagle@varnumlaw.com
rjgroendyk@varnumlaw.com
pasmit@varnumlaw.com

### DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO ALTER OR AMEND THE JUDGMENT AND MOTION FOR RECONSIDERATION

NOW COME the Defendants, by and through counsel, and file this response in opposition to Plaintiff's Motion to Alter or Amend The Judgment and Motion For Reconsideration. (Dkt. 87).

### I.     INTRODUCTION AND LEGAL STANDARD

Plaintiff has filed a Motion to Alter or Amend the Judgment and Motion for Reconsideration pursuant to Federal Rule of Civil Procedure 59.  Plaintiff states, the "court

committed numerous palpable errors in its Opinion and Order granting summary judgment to the Defendant Marz."  Plaintiff's Memorandum in Support of Motion to Alter and Amend the Judgment and Motion for Reconsideration ("Plaintiff's Memorandum").  Dkt. 87-2 PageID 743.

Under FRCP 59, a court may alter a judgment based on: 1) a clear error of law; 2) newly discovered evidence; 3) an intervening change in controlling law; or 4) a need to prevent manifest injustice.  *Leisure Caviar, LLC v. United States Fish and Wildlife Service*, 616 F.3d 612, 615 (6th Cir. 2010).

For the reasons set forth below, the Court's Opinion and Order (Dkt. 82) was not clearly erroneous, and Plaintiff's motion should be denied.

## II. LAW AND ARGUMENT

### A. THIS COURT CORRECTLY HELD THAT HARTGER'S TWO OUTSTANDING BENCH WARRANTS DEFEATED HIS FALSE ARREST CLAIM.

Hartger claims this Court erred by holding that his two outstanding bench warrants defeated his false arrest claim.  Hartger is wrong.  The two outstanding warrants were discovered after Hartger's arrest and accordingly preclude his false arrest claim as a matter of law.

"An arrest pursuant to a facially valid warrant is normally a complete defense to a federal constitutional claim for false arrest[.]"  *Voyticky v. Village of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005).  Officers are entitled to rely on warrants appearing in LEIN when making an arrest.  *Taggart v. County of Macomb*, 587 F. Supp. 1080, 1082 (E.D. Mich. 1982) ("[T]he Court holds, as a matter of law, that absent actual knowledge that an arrest warrant is no longer valid or in effect, it is reasonable for a law enforcement officer to make an arrest based on information received through the LEIN system.").

As this Court observed, "the record comfortably supports summary judgment" on the false arrest claim.  Dkt. 82, PageID 723.  There is no dispute that there were two bench warrants

2

out for Plaintiff's arrest at the time in question. *Id.* at PageID 727. Accordingly, under well-established case law, this Court correctly held that the two outstanding bench warrants provided the probable cause for Hartger's arrest. *Id.* at PageID 728.

Plaintiff's Motion reasserts his prior argument claiming his arrest was unjustified because it occurred before the officers discovered Hartger's outstanding warrants. Dkt. 87-2, PageID 743-744. But this Court already thoroughly addressed Plaintiff's argument in its Opinion and correctly noted that this was not an "arrest first and find a reason later" case. Dkt. 82, PageID 728. To the contrary, Hartger was not arrested until after Officer Marz completed his investigation, identified Hartger, and ran the LEIN search in the police car. *Id.* at PageID 728.

On similar facts, the Eastern District of Michigan in *Shumate v. Cleveland*, No. 09-11545, 2010 WL 2813334, (E.D. Mich. July 14, 2010), reached the same conclusion as this Court. Like Officer Marz in this case, the officers in *Shumate* encountered a "resistant and belligerent" individual when they responded to a call. *Id.* at *2. They first "attempted to control and assess" the subject. *See id.* As in this case, the officers in *Shumate* then handcuffed the subject and brought him to their police car, where they first learned that outstanding arrest warrants existed. *Id.* Like Hartger, the *Shumate* plaintiff claimed that "the officers lacked probable cause to arrest him because . . . his arrested occurred before the officers were aware of his outstanding warrants in the LEIN system." *Id.* at *7. The court rejected the plaintiff's argument, relying on the plaintiff's failure to provide any evidence supporting his theory that the officers became aware of the LEIN warrant after the arrest. *See id.* As a result, the court granted summary judgment to the defendant officers on the plaintiff's false arrest claim. *See id.* at *8.

Similarly here, there is no record evidence supporting Hartger's theory that Officer Marz first became aware of the LEIN warrants *after* Hartger's arrest in the police car. Dkt. 87-2,

3

PageID 743-746.  In fact, Plaintiff fails to even identify the precise time at which he believes Hartger's arrest occurred.  *See id.*  Officer Marz stopped Hartger by the party house's porch.  But "an officer doesn't need probable cause to *stop* someone–reasonable suspicion is enough." *Howse v. Houdous*, 953 F.3d 402, 407 n.1 (6th Cir. 2020) (emphasis in original).  Moreover, while Hartger was eventually handcuffed on the ground (after resisting Officer Marz's attempts to do so) "[t]he mere act of handcuffing doesn't transform a stop into an arrest."  *Id.* (citing *United States v. Martinez*, 808 F.3d 1050, 1053 (5th Cir. 1987)).  Similarly, running the LEIN search on Hartger did not turn Hartger's detention into an arrest.  *See United States v. Young*, 707 F.3d 598, 603 (6th Cir. 2012) (holding officers do not exceed permissible scope of *Terry* stop by running a warrant check, even when the warrant check is unrelated to the suspected crime because it may help clear a person's name or give officers important information about the suspect).  Instead, as this Court correctly held, Officer Marz first identified Hartger in the police car, then "discovered that there were two bench warrants out for [his] arrest, and [then] took him into custody."  Dkt. 82, PageID 728.  Accordingly, this Court correctly held that no dispute of material fact exists that Hartger was arrested *after* discovery of the bench warrants by Officer Marz.  Plaintiff's false arrest claim fails accordingly.  *See Voyticky*, 412 F.3d at 677.

Plaintiff's cases do not change this result.  Plaintiff cites *Johnson v. United States*, 333 U.S. 10 (1948), and *United States v. Gross*, 624 F.3d 309 (6th Cir. 2010), for the proposition that the exclusionary rule bars "evidence obtained after an arrest" from being "used retroactively to justify the arrest."  Dkt. 87-2, PageID 743.  While that may have been the general rule previously, the Supreme Court recently held in *Utah v. Strieff*, 136 S. Ct. 2056 (2016), that an officer's discovery of a valid, pre-existing arrest warrant attenuated the connection between the

unlawful stop and drug-related evidence seized from the defendant during the search incident to arrest, thus rendering the evidence admissible. *Id.* at 2062.

Plaintiff's cases are probably no longer good law, but they are also irrelevant. First, this case does not implicate the exclusionary rule. And "[w]hether the exclusionary sanction is appropriately imposed in a particular case . . . is 'an issue separate from the question of whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct.'" *United States v. Leon*, 468 U.S. 897, 906 (1984) (quoting *Illinois v. Gates*, 462 U.S. 213, 223 (1983)). Second, this case does not involve evidence obtained after an arrest. Instead–as discussed above and as this Court correctly held–Hartger's arrest occurred after the police discovered the outstanding bench warrants for his arrest. Dkt. 82, PageID 727-728. Accordingly, Plaintiff's position is meritless.

### B. THIS COURT CORRECTLY HELD IN THE ALTERNATIVE THAT OFFICER MARZ HAD PROBABLE CAUSE TO ARREST HARTGER.

This Court also correctly held in the alternative that probable cause existed to arrest Hartger for resisting and obstructing. Probable cause is "not a high bar." *Kaley v. United States*, 134 S. Ct. 1090, 1103 (2014). It "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 243-44 n. 13 (1983). Courts must consider the "totality of the circumstances" in analyzing probable cause. *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018).

Here, Officer Marz reasonably suspected that criminal activity was afoot when he approached the party house. The party was going strong late into the night–Officer Marz arrived after 2:40 A.M. *See* White Dep., 7:10-15 (Dkt. 70-16, PageID 458); Marz Dep., 14:1-25 (Dkt. 70-2, PageID 319). Upon approaching the house, the officers smelled marijuana emanating from nearby cars, people, and the house itself. Holmes Dep., 18:22-23 (Dkt. 70-14, PageID 450);

5

White Dep., 19:17-25 (Dkt. 70-16, PageID 461). Upon approaching Hartger walking outside the porch area, Officer Marz smelled marijuana on his person. 12/07/2017 Incident Report, at p. 2 (Dkt. 70-1, PageID 307). When the other officers arrived, they likewise smelled marijuana on Hartger. White Dep., 14:16-19; 20:7-10 (Dkt. 70-16, PageID 459, 461).

The partygoers' reactions gave Officer Marz further reason to believe that criminal activity was probable. Several partygoers scattered at the sight of Officer Marz in his uniform. Marz Dep., 18:1-25; 71:19-72:7 (Dkt. 70-2, PageID 320); 12/10/2017 Incident Report, at p. 2 (Dkt. 70-1, PageID 307). They rushed inside and locked the door behind them. 12/10/2017 Incident Report, at p. 2 (Dkt. 70-1, PageID 307); Marz Dep., 18:1-25 (Dkt. 70-2, PageID 321). Hartger himself tried to get inside with the others as Officer Marz approached. Hartger Dep., 53:1-2; 56-59 (Dkt. 70-3, PageID 351-352); *see also* Marz Dep., 19:1-21 (Dkt. 70-2, PageID 321). "'[U]nprovoked flight upon noticing the police is certainly suggestive' of wrongdoing and can be treated as 'suspicious behavior' that factors into the totality of circumstances." *Wesby*, 138 S. Ct. at 587.

Additionally, all officers testified that they smelled marijuana. 12/07/2017 Incident Report, at p. 2 (Dkt. 70-1, PageID 307); White Dep., 19:17-25 (Dkt. 70-16, PageID 461); Holmes Dep., 18:22-23 (Dkt. 70-14, PageID 450). Possession of more than one ounce of marijuana is a federal misdemeanor, and possession of a personal use amount is a civil violation. *See* 21 U.S.C. §§ 802(6), 812 Schedule 1(c)(10), 844(a), 844a; 28 C.F.R. § 76.2. And precedent in this circuit provides that the smell of marijuana is enough to detain and arrest a suspect. *See United States v. Carrillo-Alvardo*, 558 F. App'x. 536, 544 (6th Cir. 2014) (holding officers had probable cause to search vehicle after smelling marijuana); *United States v. Winston*, No. 13-CR-20394, 2013 WL 6667729, at *7 (E.D. Mich. Dec. 18, 2013) (holding that officers' "smelling

marijuana emitting from Defendant's vehicle" provided the officers with "the requisite level of reasonable suspicion necessary to enforce a *Terry* stop on the car, Defendant, and his passenger.").

Finally, Hartger resisted and obstructed justice. Under Michigan law, it is a criminal offense for a person stopped by a police officer to resist or obstruct the officer while he or she is performing their duties. MCL § 750.81(d)(1). The definition of "obstruct" includes "the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command." MCL § 750.81(d)(7)(a). Engaging in conduct that hinders an officer conducting a police investigation is covered by the resisting and obstructing statute. *People v. Pohl*, 207 Mich. App. 332, 333 (1994).

There is no genuine issue of material fact that when Officer Marz responded to the party in a marked police car and full police uniform, he walked up to Hartger (who had turned to go inside and was attempting to open the door) and told Hartger to "stop." Hartger Dep., at 52-59 (Dkt. 70-3, PageID 351-353); Marz Dep., 18:1-19:24 (Dkt. 70-2, PageID 320-321). Plaintiff–a wiry young man who claims to work out a lot–refused to comply with Officer Marz's instructions. 12/07/2017 Incident Report, at p. 2 (Dkt. 70-1, PageID 307); Marz Dep., 20:16-21:10 (Dkt. 70-2, PageID 321). Instead, Hartger admits he told Officer Marz "don't touch me" and then began screaming for "help" against Officer Marz from the partygoers inside the house when Officer Marz purportedly "grabbed" him. Hartger Dep., 58:4-6; 63:7-10; 66:12-14 (Dkt. 70-2, PageID 353-355). At that point, Officer Marz reasonably viewed Plaintiff as resisting and his attempt to restrain him was reasonable under the circumstances.

Hartger's own deposition testimony establishes that he continued resisting once he was brought to the ground. It is undisputed that Officer Marz struggled with Plaintiff on the ground

7

to try to get both hands handcuffed behind his back. Hartger Dep., 66:19-67:9; 88:3-12, 24-25; 89:15-23; 92:5-12; 103:4-6 (Dkt. 70-2, PageID 355-356; 360-361, 364); 12/07/2017 Incident Report, p. 2 (Dkt. 70-1, PageID 307); Marz Dep., 24:6-23 (Dkt. 70-2, PageID 322). Hartger admits that rather than comply with Officer Marz's instructions, he did not permit him to complete the action of handcuffing him, testifying that he and Officer Marz "rolled around" on the ground. Hartger Dep., 66:19-67:9; 88:3-12, 24-25; 89:15-23; 92:5-12; 103:4-6 (Dkt. 70-2, PageID 355-356; 360-361, 364).

Hartger's initial refusal to submit to an order preceded his detainment. Once Officer Marz made the decision to detain him, he actively resisted. It was only with a second officer's assistance that the officers were able to finally handcuff Plaintiff. White Dep., 12:1-5; 31:23-32:5 (Dkt. 70-16, PageID 459, 464); Marz Dep., 27:24-28:8 (Dkt. 70-2, PageID 323).

Accordingly, viewing the totality of the circumstances, no dispute of material fact exists that Hartger resisted and obstructed Officer Marz. *See Radlaff v. Gillispie*, 791 F.3d 638, 641 (6th Cir. 2015) (holding active resistance to arrest includes "physically struggling with, threatening or disobeying officers" and "includes refusing to move your hands for the police to handcuff you, at least if that inaction is coupled with other acts of defiance.").

Hartger's arguments to the contrary are meritless. First, he asks this Court to segregate the "initial physical stop" of Hartger from the remaining facts and dissect that in isolation. Dkt. 87-2, PageID 747. The Supreme Court, however, recently warned against engaging in that type of exercise, characterizing it as "mistaken in light of our precedents" because "the totality of circumstances requires courts to consider the whole picture." *See Wesby*, 138 S. Ct. at 588 (citations and quotation marks omitted). Specifically, the Supreme Court held that "[t]he totality of circumstances test precludes this sort of divide-and-conquer analysis." *Id.* But even if this

8

Court did examine the initial physical stop, Officer Marz clearly had reasonable suspicion to detain Hartger, as discussed above.

Second, Hartger complains that this Court should have credited his claimed unawareness that marijuana was being used on the premises. Dkt. 87-2, PageID 748. It follows, Plaintiff argues, that there remains a factual dispute on this issue. *Id.* Hartger's argument, however, confuses the notions of factual certainty and probable cause. "Probable cause does not require officers to rule out a suspect's innocent explanation for suspicious facts." *Wesby*, 138 S. Ct. at 588. Instead, the question is "whether a reasonable officer could conclude–considering all of the surrounding circumstances, including the plausibility of the explanation itself–that there was a substantial chance of criminal activity." *Id.* (citation and quotation marks omitted). As discussed above and as this Court correctly held, a reasonable officer could conclude that there was criminal activity at the party house, given the totality of the circumstances.

Third, Plaintiff quibbles with this Court's use of the word "maneuver" to describe Hartger's resistance while on the ground, claiming the Court did not read Hartger's deposition testimony "carefully and fairly." Dkt. 87-2, PageID 750. To the contrary, however, this Court accurately characterized Hartger's deposition testimony as essentially lacking "actual facts from Plaintiff's point of view." Dkt. 82, PageID 721. As Defendants quoted at length in their motion, Hartger's deposition testimony was inconsistent and speculative at best. Below are only a few examples:

- Hartger testified that Officer Marz punched him, but then later stated he didn't know whether Officer Marz struck him with a fist. Hartger Dep., 67:22-23, 72:24-73:3 (Dkt. 70-2, PageID 355-356).

- Hartger testified that Officer Marz dragged him and slammed him, but seconds later he couldn't remember whether Officer Marz picked him up and slammed him. Hartger Dep. 67:18, 68:1-6 (Dkt. 70-2, PageID 355).

9

- Hartger first testified that he was hit, but then seconds later said he didn't know. Hartger Dep. 71:24-72-1 (Dkt. 70-2, PageID 356).

- Hartger strangely testified that at one point during the parties' altercation he "was facing the ceiling, facing the ground, facing the side, facing every which way until I was face down."  Hartger Dep. 73:13-17 (Dkt. 70-2, PageID 356).

- Hartger testified that Officer Marz dragged him into the yard. Hartger Dep., 76:18-19. However, a few moments later he testified that Officer Marz did not drag him to the front of the yard. Hartger Dep. 77:2-10 (Dkt. 70-2, PageID 357).

Plaintiff's quotations from his deposition testimony about several more "maneuvers" that supposedly occurred during the parties' altercation only further establish that Hartger's (at best) speculative and inconsistent deposition testimony is insufficient to survive Defendant's Motion for Summary Judgment. *See Goodrich v. Everett*, 193 Fed. App'x. 551, 557 (6th Cir. 2006) ("Goodrich's ambiguous description of the pushing, shoving, and kicking he endured constitutes at best a scintilla of evidence, insufficient for rational trier of fact to conclude that a reasonable officer would consider the force excessive.").

### C. THE COURT CORRECTLY HELD THAT PLAINTIFF IS NOT ENTITLED TO AN ADVERSE INFERENCE FOR EVIDENCE SPOLIATION BECAUSE DEFENDANT MARZ HAD NO CONTROL OVER THE AUDIO RECORDING, DID NOT DESTROY IT, AND DID NOT HAVE A CULPABLE STATE OF MIND.

In Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment, Plaintiff asserts, "[T]here should be an adverse interference [sic] instruction in this case against the Defendant Marz because of the destruction of the videotape and audiotape." Dkt. 74, PageID 529. Plaintiff states that, for the purposes of this summary judgment motion, this Court should infer that the audiotape and videotape, had they been produced, would have been adverse to Officer Marz. *Id*. Plaintiff asserts this Court erred in rejecting Plaintiff's "request for a spoliation inference" (Memorandum, Dkt. 87-2, PageID 751), but the Court's holding was correct.

A party seeking an adverse inference instruction based on the destruction of evidence must establish that 1) the party having control over the evidence had an obligation to preserve it at the time it was destroyed; 2) the records were destroyed "with a culpable state of mind;" and 3) the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. *Beaven v. United States Department of Justice*, 622 F.3d 540, 553 (6th Cir. 2010). An adverse inference for evidence spoliation is appropriate if the party destroyed the evidence, knew the evidence was relevant to some issue at trial, and their culpable conduct resulted in its loss or destruction. *Id*.

Defendants addressed Plaintiff's spoliation argument in its Reply Brief in Support of Defendant's Motion for Summary Judgment ("Reply Brief"), Dkt. 76, PageID 697-700. Officer Marz had no control over any recording of the events of December 10, 2017, did not delete it, did not have access or the ability to delete it, and did not have a "culpable state of mind." Reply Brief (Dkt. 76 PageID, 699); Marz Dep. 75:21-76:8 (Dkt. 70-2 PageID, 335).

Plaintiff has produced <u>no</u> evidence that Officer Marz had control over any recording or destroyed it, much less that he destroyed it with a culpable state of mind. Spoliation sanctions are not appropriate when the party had no control over the evidence. *Lemmon v. City of Akron, Ohio*, 788 Fed. App'x. 410, 422 (2019). The Sixth Circuit has required a showing of bad faith to justify an adverse inference from spoliation of evidence. *Avery v. Taylor*, 2011 WL 4576310, at *7 (E.D. Mich. Sept. 30, 2011).

Plaintiff has introduced no evidence rebutting the deposition testimony of Lieutenant Russell Larson that Officer Marz had no control over any recording of the incident, did not delete it, and that any deletion occurred automatically and without human intervention. Reply Brief (Dkt. 76, PageID 699); Larson Dep., 25:3-4 (Dkt. 74-9, PageID 634).

Accordingly, this Court did not err in rejecting Plaintiff's request for a spoliation inference.

### D. THE COURT CORRECTLY DISMISSED PLAINTIFF'S EXCESSIVE FORCE CLAIM.

Plaintiff asserts that this Court "committed palpable error" by finding Mr. Hartger's deposition testimony to lack credibility, by "overlooking" witnesses, "overlooking" his adverse inference argument, and by concluding there was no excessive force. Memorandum (Dkt. 87-2, PageID 752). Plaintiff states this Court "engaged in inappropriate characterizations of the actual facts." Memorandum (Dkt. 87-2, PageID 753). These arguments are meritless, and the Court correctly dismissed Plaintiff's excessive force claim.

To survive a motion for summary judgment, a non-moving party must show sufficient probative evidence that would permit a finding in his favor on more than mere speculation and conjecture. *Lewis v. Phillip Morris, Inc.*, 355 F.3d 515, 533 (6th Cir. 2004); *Clemente v. Vaslo*, 679 F.3d 482, 495 (6th Cir. 2012); *see also*, *Goodrich, supra.*

In this case, Plaintiff's inconsistent, speculative and ambiguous description of the events of December 10, 2017 cannot survive Defendants' Motion for Summary Judgment. The Court correctly observed that Plaintiff's version of the events of December 10, 2017, "is barely a recital of facts at all. Rather, his deposition testimony is laced with impressionistic and subjective varnishes and legal conclusions . . . ." Dkt. 82, PageID 730.

Defendants' Brief in Support of Defendants' Motion for Summary Judgment ("Brief") (Dkt. 70, PageID 283-287) and Defendants' Reply Brief (Dkt. 76, PageID 689-693) discussed in detail the vague, inconsistent, and speculative nature of Plaintiff's deposition testimony. For example:

- As the Court observed, Plaintiff at one point claims he was punched and hit by Officer Marz, but then testified he couldn't say whether Officer Marz struck him:

  "Q. Where did he strike you on your body?

  A. I felt – I felt lower back. I felt lower back and, you know, area. It could have been grabbing me. I don't know if he struck me with a fist. I don't know if he struck me with a backhand. I don't know."

Hartger Dep. 72:24-73:3 (Dkt. 70-3, Page ID 356).

- When asked at his deposition how many times Officer Marz hit him, Plaintiff testified that he didn't know, and that maybe Officer Marz didn't hit him:

  "Q. And how many times did he hit you?

  A. I don't know. And when I say hit, that could be a – a whatever maneuver, or maybe he missed. I don't know."

Hartger Dep., 71:24-72:1 (Dkt. 70-3, Page ID 356).

- When asked again how many times Officer Marz hit him, Plaintiff again replied that he didn't know and couldn't remember:

  "Q. Okay. And how many times did he hit you?

  A. I don't know. I can't remember. And I don't know if they were strikes/fists or it was just him grabbing me in a hard manner."

Hartger Dep., 74:1-4 (Dkt. 70-3, Page ID 357).

- Plaintiff claims he was "slammed" to the ground by Officer Marz, but explained that by "slammed" he meant that Officer Marz took Plaintiff's body down with his and didn't let go:

  "Q. And, again, when you said slammed, what do you mean, did he pick you up from behind and throw you head first? Did he - - tell me what happened.

> A. Yeah, it was - - he took his body down with mine and he didn't let go to maximize the damage so he didn't – he took his body down with mine to get more force into me."

Hartger Dep., 81:11-16 (Dkt. 70-3, PageID 358).

The Court accurately stated that Plaintiff's deposition testimony was "equivocal at best," and correctly concluded: "The best that can be drawn factually for Plaintiff from consideration of his whole testimony is that Defendant Marz approached him on the front porch; that Defendant Marz eventually took him to the ground hard; and that Defendant Marz, with the assistance of others eventually handcuffed him." Dkt. 82, PageID 731-732.

The Court also correctly concluded that Plaintiff had not suffered any "significant injuries" as a result of his arrest. Defendants addressed in detail the lack of support for Plaintiff's injury claims in its Brief in Support of Defendants' Motion for Summary Judgment. Dkt. 70, PageID 294. Plaintiff did not seek medical treatment at the Kent County Correctional Facility; did not seek any treatment whatsoever until an appointment with a physical therapist six months after the incident; and provided this Court with no medical records, deposition testimony of medical professionals, or any other medical evidence supporting his claim of "significant injuries."

Finally, Plaintiff argues that this Court committed "palpable error" by not finding a genuine issue of material fact on the nearly identical affidavits dated December 14, 2017, from three alleged "witnesses" to the events of December 10, 2017. Defendants addressed these "witnesses" in their Reply Brief. Dkt. 76, PageID 700.

The affidavits of these "witnesses" do not create a genuine issue of material fact. Each of these witnesses state that Plaintiff was "slammed to the ground" (explained by Plaintiff to mean Officer Marz took him to the ground with his body and did not let up), but do not state that

Officer Marz hit, struck, punched, kicked, manipulated, flung, maneuvered, dragged, rolled around, or otherwise "assaulted" Plaintiff, as Plaintiff alleges in this case. Their affidavits are inconsistent with Plaintiff's deposition testimony, and Plaintiff cannot avoid summary judgment by offering testimony that contradicts his own testimony. *Prosser v. Ross*, 70 F.3d 1005, 1008 (8th Cir. 1995). The testimony of these "witnesses" is consistent with the Court's observation that, at best, the facts only support the conclusion that Officer Marz took Plaintiff to the ground hard.

### E. OFFICER MARZ IS ENTITLED TO QUALIFIED IMMUNITY.

In the alternative, the Court's Opinion and Order was not clearly erroneous because Officer Marz is entitled to qualified immunity.

Defendants moved for summary judgment on the ground of qualified immunity, as discussed in their Brief (Dkt. 70, PageID 278-280, 282-295); and Reply Brief (Dkt. 76, PageID 696-697). Defendants also filed a Notice of Supplemental Authority (Dkt. 77), which notified the Court of the March 18, 2020, decision of the Sixth Circuit Court of Appeals in *Howse v. Hodous*, 953 F.3d 402 (2020).

In *Howse, supra*, the Sixth Circuit affirmed the district court's dismissal of a claim for excessive force brought against the officers under the Fourth Amendment on the ground the officers were entitled to qualified immunity. The facts in *Howse* are strikingly similar to the facts in this case. Plaintiff has not cited clearly established law showing that the force used in Plaintiff's arrest was inappropriate and violated his constitutional rights. Officer Marz is entitled to qualified immunity, and therefore Plaintiff cannot show clear error in the Court's Opinion and Order dismissing his excessive force claim.

### III. CONCLUSION

Wherefore, Defendants request that this Court deny Plaintiff's Motion to Alter or Amend the Judgment and Motion for Reconsideration.

          Respectfully submitted,

          VARNUM LLP
          Attorneys for Defendants Brandon Marz and Kent County

Dated: July 16, 2020        By: /s/ *Randall J. Groendyk*
          Timothy E. Eagle (P38183)
          Randall J. Groendyk (P37196)
          Peter A Smit (P27886)
          Herman D. Hofman (P81297)
BUSINESS ADDRESS & TELEPHONE:
          Bridgewater Place
          P.O. Box 352
          Grand Rapids, MI 49501-0352
          (616) 336-6000
          rjgroendyk@varnumlaw.com
          hdhofman@varnumlaw.com

16655971_1.docx